Filed 4/25/13  Sylvester v. Yuh CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LANCE SYLVESTER et al., | |
| Plaintiffs and Respondents, | G046704 |
| v. | (Super. Ct. No. 30-2010-00410269) |
| LUNDAR YUH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed in part as modified, reversed in part, and remanded with directions.

Schwartz & Asiedu and Kwasi A. Asiedu for Defendant and Appellant.

Law Offices of Douglas Lee Weeks and Douglas Lee Weeks for Plaintiffs and Respondents.

\*          \*          \*

## INTRODUCTION

Defendant Lundar Yuh appeals from a default judgment entered after the trial court imposed terminating sanctions against him for misuse of the discovery process. Following a default prove-up hearing, the court awarded plaintiffs Lance Sylvester and Elena Sylvester (together, the Sylvesters) $60,000 in compensatory damages and $300,000 in punitive damages.

We conclude the trial court did not abuse its discretion by imposing terminating sanctions against Yuh for misuse of the discovery process or by denying Yuh's motion to vacate the default judgment under Code of Civil Procedure section 473, subdivision (b). We affirm the award of compensatory damages in favor of both Elena Sylvester and Lance Sylvester. We conclude, however, the Sylvesters failed to present admissible evidence of Yuh's financial condition sufficient for us to make a well-informed decision whether the amount of punitive damages is excessive, as Yuh contends. We lack jurisdiction to consider his challenge to the postjudgment order denying the motion to vacate the judgment.

We therefore strike the award of punitive damages and remand for a new default prove-up hearing only on the issue of the amount of punitive damages. In all other respects, and with one modification, the judgment is affirmed.

## FACTS

The following facts were adduced at the default prove-up hearing.

Elena Sylvester borrowed money from Yuh in 2005 and 2006. She believed the loan from Yuh was unsecured. Later, she discovered that four deeds of trust in favor of Yuh had been recorded against the home she owned with her husband, Lance Sylvester. A notice of default had been recorded for one of the deeds of trust.

2

The Sylvesters filed a lawsuit against Yuh (Orange County Superior Court case No. 30-2008-00103942), alleging the deeds of trust were forged and appeared to have been notarized by Yuh's daughters, Jia Juh Yuh and Jia Wei Yuh. Yuh filed a cross-complaint against Elena Sylvester, alleging she owed some $142,000 on the loans.

Before the forgery case went to trial, the parties reached a settlement, the terms of which were set forth in a stipulation for entry of judgment (the Stipulation) executed by the parties in April 2009. Under the terms of the Stipulation, Elena Sylvester agreed to pay Yuh the sum of $93,000 in four installments between May 2009 and March 2010. Yuh agreed to rescind the notice of default upon execution of the Stipulation, reconvey the four deeds of trust upon receipt of the first installment payment, and dismiss the cross-complaint with prejudice upon receipt of the final installment.

Elena Sylvester made all four installment payments. Yuh rescinded the notice of default, reconveyed the four deeds of trust, and filed a request for dismissal with prejudice of the cross-complaint. The dismissal was entered in April 2010.

On March 5, 2010, Yuh had a forged deed of trust in the amount of $55,000 recorded against the Sylvesters' home. He took one of the reconveyed deeds of trust and used "white out" to cover the amount of $22,000, over which he typed $55,000. He attached the second page of the $22,000 deed of trust, bearing a disputed signature of Elena Sylvester, and instructed his daughter, Jia Wei Yuh, to notarize the forged deed of trust. During his deposition, Yuh testified he forged the $55,000 deed of trust.

On March 15, 2010, Yuh sent Elena Sylvester a letter demanding she pay him $55,000. The letter did not mention the forged deed of trust. Ignoring the Stipulation, Yuh stated in the letter that Elena Sylvester owed $55,000 on the amounts loaned to her and threatened legal action if she failed to pay him.

In April 2010, after the dismissal of the cross-complaint had been entered, Yuh filed a small claims lawsuit against Elena Sylvester. He later filed a proof of service stating Elena Sylvester had been personally served at her home on May 29, 2010 at

3

9:47 a.m.  The proof of service was signed under penalty of perjury by "Tony Lan."  On May 29, 2010, Elena Sylvester was in the Philippines and her home was unoccupied.  She submitted a photocopy of her passport stamped for arrival in the Philippines on May 17, 2010 and departing the Philippines on May 30, 2010.  The address given by the process server on the proof of service is a vacant lot.

After receiving a notice of entry of judgment on Yuh's small claims lawsuit, Elena Sylvester retained counsel who filed a motion to vacate the judgment.  The court granted the motion and entered a judgment that Elena Sylvester owed Yuh nothing on his claim.

In a letter to the Sylvesters, dated August 3, 2010, Yuh wrote:  "Notice is given to above mentioned party.  That you are being sued again in the different Court very shortly, no matter I won or Loss in this court.  [¶] . . . [¶]  Especially with your olden age, it is by all means NOT HEALTHY at all.  Please wait for an inauspicious event."

In early September 2010, the Sylvesters discovered the $55,000 forged deed of trust that Yuh had recorded against their home.  They were afraid of Yuh and placed security cameras at their home.  Lance Sylvester weekly checked the Orange County Recorder's Office online to see if Yuh had recorded anything else.

### PROCEDURAL HISTORY

In September 2010, after discovering the forged deed of trust, the Sylvesters filed a verified complaint against Yuh, asserting causes of action for (1) malicious prosecution, (2) breach of contract, (3) tortious breach of contract, (4) intentional infliction of emotional distress, (5) abuse of process, (6) cancellation of instrument, (7) quiet title, and (8) unfair business practices.  At some point, the Sylvesters abandoned the quiet title cause of action, and the judgment does not refer to it.

In January 2011, the Sylvesters served a set of special interrogatories and a set of requests for production of documents on Yuh's counsel, Thomas F. Nowland of

4

Nowland Stone LLP.  Yuh, through his counsel, served responses to the special interrogatories, which asserted standard boilerplate responses to all of them and answered only special interrogatory Nos. 19, 20, 21, and 22.  The responses were verified by Yuh and signed by his counsel.  Special interrogatory No. 19 asked Yuh if he contended Elena Sylvester owed him money, and special interrogatory Nos. 20, 21, and 22 asked him to state all facts and to identify each document and witness supporting such contention.  Yuh answered special interrogatory No. 19, "[y]es."  In response to special interrogatory No. 20, he stated, "ELENA SYLVESTER borrowed money from responding party and has not fully repaid responding party"; in response to special interrogatory No. 21, he identified cancelled checks and the loan agreement; and in response to special interrogatory No. 22, he identified Lance Sylvester and Elena Sylvester.

In response to the requests for production of documents, Yuh asserted standard boilerplate objections and produced documents in response only to request No. 1, which asked for all documents identified in Yuh's responses to the special interrogatories.  The responses to the requests for production of documents were verified by Yuh and signed by his counsel.  The documents produced consisted of 21 pages of photocopies of checks from 2005 to 2007 and a copy of a document dated April 30, 2007.  Those documents related to the previously settled case.

Counsel for the Sylvesters and counsel for Yuh exchanged letters regarding the discovery responses.  When counsel spoke at a case management conference, Yuh's counsel declined to agree to provide further discovery responses.  On March 28, 2011, the Sylvesters filed a motion to compel further responses to their special interrogatories and a motion to compel further responses to their requests for production of documents.  Yuh's counsel filed opposition to the motions and argued, among other things, the motions did not include the separate statement required by the California Rules of Court governing discovery motions.  In response to the oppositions, the Sylvesters took the two

motions off calendar and, on April 25, 2011, filed corrected motions that included the required separate statements.  Yuh did not oppose these motions.

On May 10, 2011, Yuh filed a substitution of counsel, by which he substituted himself, in propria persona, in place of counsel.  He later explained he fired his counsel because counsel had advised him to assert the Fifth Amendment instead of responding to discovery.

On May 24, 2011, the trial court granted the Sylvesters' motion to compel further responses to request for production of documents Nos. 2, 3, and 5, and denied the motion as to request for production of documents No. 4.  The court imposed sanctions of $750 against Yuh personally.  The court granted in full the Sylvesters' motion to compel further responses to the special interrogatories and imposed sanctions of $1,540 against Yuh personally.  On both motions, the court ordered Yuh to provide further responses within 14 days.

Yuh did not comply with the order compelling discovery and imposing sanctions.  During his deposition on June 22, 2011, Yuh told the Sylvesters' counsel he would not comply with the order.  When the Sylvesters' counsel said he would file a motion to strike the answer if Yuh did not comply with the discovery order within two weeks, Yuh replied, "I'd like to see you try."

Also during his deposition, Yuh admitted he fabricated and recorded a $55,000 deed of trust that the Sylvesters never signed, and induced the notary public to notarize a signature purporting to be that of Elena Sylvester without her being present.  He also admitted he had sued the Sylvesters on a claim that had been settled, and admitted he might sue Elena Sylvester on the same claim again.

In July 2011, the Sylvesters filed a motion seeking terminating sanctions against Yuh for misuse of the discovery process.  The motion was made on the ground that Yuh "willfully failed to obey orders compelling further responses to interrogatories,

6

further responses to demand for production of documents, and payment of sanctions." Yuh did not file opposition to the motion.

The motion for terminating sanctions was heard on August 30, 2011. At the hearing, the Sylvesters' counsel confirmed that Yuh had not served amended discovery responses, paid the monetary sanctions, or opposed the motion for terminating sanctions. Yuh responded: "May I ask one more time, it's the last time, whatever paper he need, give me a list, I'll do tomorrow morning. Whatever reproduction of documentation or any question . . . , I will answer anything, because I have special excuse because my lawyer—I give to him, he doesn't want to give to him. That's why we fight. We fired the lawyer. I just don't know why he can't give me one more . . . chance . . . ." The trial court gave Yuh one week to comply with the order compelling discovery, including payment of sanctions, and informed the Sylvesters they could appear ex parte if he did not timely comply.

Eight days later, on September 7, 2011, the Sylvesters filed an ex parte application to strike the answer filed by Yuh and enter his default. In a supporting declaration, the Sylvesters' counsel stated he had received 44 pages of documents from Yuh in an "unverified mishmash of paper" that did not comply with discovery law. "I am left to guess," counsel stated, "which of the 44 pages, if any, are in response to the orders compelling Responses to Request for Production of Documents, and Interrogatories." Counsel had not received payment from Yuh of the monetary sanctions imposed against him personally.

On September 8, 2011, the trial court granted the Sylvesters' ex parte application to strike the answer filed by Yuh and enter his default. His answer was ordered stricken and his default was entered. (Yuh's answer does not appear in the appellate record.) Later that month, Yuh filed an ex parte application for reconsideration under Code of Civil Procedure section 1008, subdivision (a) and to set aside the default under Code of Civil Procedure sections 473 and 473.5. The trial court denied Yuh's ex

7

parte application on September 23, 2011.  On that same day, Yuh filed a noticed motion to set aside the default and for reconsideration of the order granting terminating sanctions.

Before that motion was heard, Yuh filed another noticed motion to set aside default and default judgment pursuant to Code of Civil Procedure sections 473 and 473.5. In a supporting declaration, Yuh asserted the Sylvesters' counsel had denied his request for additional copies of the discovery requests, that he had delivered all the documents in his possession, which were responsive to the requests, and that he believed, in good faith, that he had complied with the trial court's discovery order.

The court heard Yuh's first noticed motion to set aside the default and for reconsideration on November 1, 2011.  At the hearing, Yuh stated the Stipulation was unfair to him, he accepted it under duress, and he "should have finished the case."  He acknowledged he had filed the small claims court action against Elena Sylvester "to get [a] little bit [of] interest of $7,500."   At the end of the hearing, the trial court denied Yuh's motion.  Two weeks later, the court denied Yuh's second noticed motion to set aside the default and default judgment.  The court found, "no mistake, inadvertence, surprise, or excusable neglect is shown to support relief pursuant to [Code of Civil Procedure] *Section* 473."

A default prove-up hearing was conducted on December 19, 2011.  The Sylvesters testified at the hearing.  A judgment, entered on the same day, ordered the cancellation of the forged deed of trust recorded on March 5, 2010, awarded the Sylvesters compensatory damages of $60,000, punitive damages of $300,000, attorney fees of $22,986.70, and costs of $1,842, for a total judgment of $384,828.70.

In April 2012, after filing a notice of appeal from the judgment, Yuh brought a motion in the trial court to vacate the judgment on the ground it was void "for lack of due process notice of the damages sought by the Plaintiff[s] in the Complaint." The motion was filed by Yuh's counsel, Patrick Lund and Gregory Richardson of the

8

Lund Law Group. In their opposition, the Sylvesters pointed out they had served a statement of damages with the summons and complaint. In May 2012, the trial court denied the motion to vacate the judgment. Yuh did not file a notice of appeal from the order denying that motion.

**DISCUSSION**

**I.**

**The Trial Court Did Not Abuse Its Discretion by Issuing Terminating Sanctions.**

Yuh argues the trial court abused its discretion by striking his answer and entering his default as a sanction for misuse of the discovery process. He asserts his conduct did not rise to the level of discovery abuse that warranted terminating sanctions.

At the outset, we address Yuh's self-description as a "clueless *pro per* defendant," to whom the trial court did not give the same consideration and courtesy given to attorneys. Throughout much of the proceedings in the trial court, Yuh was represented by counsel, and he fired his counsel over a disagreement in strategy, not due to inability to pay his counsel fees. A litigant appearing in propria persona is held to the same rules as an attorney. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.) We see nothing in the record to suggest the trial court treated Yuh any worse than it would have treated counsel in the same position.

"Imposition of sanctions for misuse of discovery lies within the trial court's discretion, and is reviewed only for abuse." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991 (*Doppes*).) The abuse of discretion standard has been described in these general terms: "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.) A trial court exceeds the bounds of reason when, in light of the evidence and the applicable law, the court's decision was not a permissible option. "The abuse of

9

discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria. 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'" (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831.)

"California discovery law authorizes a range of penalties for conduct amounting to 'misuse of the discovery process.'" (*Doppes*, *supra*, 174 Cal.App.4th at p. 991.) As relevant here, misuses of the discovery process include "[f]ailing to respond or to submit to an authorized method of discovery" (Code Civ. Proc., § 2023.010, subd. (d)); "[m]aking, without substantial justification, an unmeritorious objection to discovery" (*id.*, § 2023.010, subd. (e)); "[m]aking an evasive response to discovery" (*id.*, § 2023.010, subd. (f)); and "[d]isobeying a court order to provide discovery" (*id.*, § 2023.010, subd. (g)).

"[Code of Civil Procedure s]ection 2023.030 authorizes a trial court to impose monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions against 'anyone engaging in conduct that is a misuse of the discovery process.' [¶] . . . [¶] As to terminating sanctions, Code of Civil Procedure section 2023.030, subdivision (d) provides: 'The court may impose a terminating sanction by one of the following orders: [¶] (1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process. [¶] (2) An order staying further proceedings by that party until an order for discovery is obeyed. [¶] (3) An order dismissing the action, or any part of the action, of that party. [¶] (4) An order rendering a judgment by default against that party.'" (*Doppes*, *supra*, 174 Cal.App.4th at pp. 991-992.)

10

In *Doppes*, we explained that in selecting the appropriate sanction, a trial court "should consider both the conduct being sanctioned and its effect on the party seeking discovery," and should tailor the sanction to fit the harm caused by the abuse of the discovery process. (*Doppes*, *supra*, 174 Cal.App.4th at p. 992.) The trial court cannot impose sanctions for misuse of the discovery process as a punishment. (*Ibid.*) "The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. 'Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery."' [Citation.] If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse. 'A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' [Citation.]" (*Ibid.*, fn. omitted.)

The trial court did not abuse its discretion by striking the answer and ordering Yuh's default as a sanction for misuse of the discovery process. Yuh's responses to the Sylvesters' special interrogatories and requests for production of documents were utterly inadequate and his boilerplate objections had no merit. Yuh thus "[f]ail[ed] to respond or to submit to an authorized method of discovery" and he made, "without substantial justification, an unmeritorious objection to discovery." (Code Civ. Proc., § 2023.010, subds. (d) & (e).) Yuh did not oppose the Sylvesters' motions to compel. As the first increment in sanctions to curb Yuh's misuse of the discovery process, the trial court (1) granted the Sylvesters' motion to compel further responses to the special interrogatories and motion to compel further responses to requests for production documents and (2) imposed monetary sanctions against Yuh personally.

11

Yuh disobeyed the court's order compelling discovery and imposing monetary sanctions. (Code Civ. Proc., § 2023.010, subd. (g).) He neither provided further discovery responses nor paid the sanctions. Although by this time he had fired his counsel and was representing himself, a litigant appearing in propria persona is held to the same rules and standards as an attorney and is entitled to no greater consideration. (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at pp. 984-985.) As monetary sanctions had failed to curb the discovery abuse, the trial court could have stepped up to the next increment of discovery sanctions and imposed issue or evidentiary sanctions against Yuh. In response to the Sylvesters' motion for terminating sanctions, the court took the more moderate approach of giving Yuh one more chance to comply with the order compelling discovery. He yet again disobeyed the order compelling discovery.

At this point, the trial court's permissible range of options included the imposition of the next level increment of sanctions—terminating sanctions. Yuh's discovery abuses had been quite egregious. After being given two chances to comply with the order compelling discovery, he had failed even to pay the monetary sanctions. Other than terminating sanctions, the only option available to the trial court was to impose issue or evidentiary sanctions against Yuh. The special interrogatories and requests for production sought information and documents that were the basis for Yuh's claims and defenses. Based on the special interrogatories and requests for production of documents to which Yuh refused to respond, the appropriate issue sanctions would have been the functional equivalent of striking his answer and entering his default.

As terminating sanctions were within the trial court's permissible range of options, the court did not abuse its discretion by ordering entry of Yuh's default as a sanction for misuse of the discovery process.

Yuh argues the trial court abused its discretion because nothing he did "came any where [*sic*] near the abusive conduct even in the cases where this court reversed similar sanctions." He cites *McGinty v. Superior Court* (1994) 26 Cal.App.4th

12

204 (*McGinty*) and other cases cited by *McGinty*, in which the Court of Appeal reversed discovery sanctions for being disproportionate to the sanctioned conduct.

In *McGinty*, *supra*, 26 Cal.App.4th at pages 206-208, the trial court entered a discovery order disqualifying the plaintiffs' expert witness as a sanction because the witness inadvertently disclosed to the plaintiffs' counsel the defendant's trade secrets that had been confidentially disclosed in another action. The Court of Appeal concluded the sanction was out of proportion to the sanctioned conduct, the prejudice to the defendant was minimal because the disclosed documents were discoverable, the sanction placed the defendant in a better position than it would have been absent the violation, and the sanction was tantamount to dismissing the plaintiffs' case. (*Id.* at pp. 213-214.) In reaching that conclusion, the *McGinty* court relied on *Wilson v. Jefferson* (1985) 163 Cal.App.3d 952, *People v. Edwards* (1993) 17 Cal.App.4th 1248, *Caryl Richards, Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, *Fabricant v. Superior Court* (1980) 104 Cal.App.3d 905, *Yarnell & Associates v. Superior Court* (1980) 106 Cal.App.3d 918, and *Fred Howland Co. v. Superior Court* (1966) 244 Cal.App.2d 605, as "[c]ases which have disapproved discovery sanctions for being out of proportion to the sanctioned conduct." (*McGinty*, *supra*, 26 Cal.App.4th at p. 212.)

Here, we conclude that terminating sanctions were not out of proportion to Yuh's conduct. Unlike that of the expert witness in *McGinty*, Yuh's conduct was not inadvertent. Yuh asserts the appropriate sanction might have been "a continuance, coupled with a sterner admonition and the threat of additional monetary sanctions." An order compelling him to comply with discovery and imposing monetary sanctions is a stern enough admonition. Yuh had been given additional time to comply with the discovery order, and there was no reason to believe additional monetary sanctions would have made any difference because he did not pay the sanctions already imposed against him. Less severe sanctions, and even the threat of terminating sanctions, had not convinced him to comply with the order compelling discovery.

13

## II.

**The Trial Court Did Not Abuse Its Discretion by Denying
Yuh's Motion to Vacate the Default.**

Yuh challenges the trial court's order of November 15, 2011, denying his motion to vacate default and default judgment under Code of Civil Procedure sections 473 and 473.5. He argues the trial court abused its discretion because he submitted with his motion evidence that he had complied with the court's discovery order.

We review an order denying a motion to vacate under Code of Civil Procedure section 473 under an abuse of discretion standard. (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 981.) In denying Yuh's motion, the trial court found that no showing of mistake, inadvertence, surprise, or excusable neglect to support relief under section 473, subdivision (b). The trial court did not abuse its discretion.

In his declaration submitted with the motion to vacate the default, Yuh stated he did not comprehend the trial court's discovery order and claimed he did not have the discovery requests propounded by the Sylvesters because his prior counsel kept all of the case files. Yuh stated that the Sylvesters' counsel refused his request for copies of the discovery requests. When, according to Yuh, he eventually did obtain copies of the discovery requests from the court clerk, he promptly advised the court and opposing counsel he would deliver all of the responsive documents to opposing counsel. He stated he delivered to opposing counsel all of the responsive documents, which exceeded 60 pages, and he attached to the declaration verified responses to the request for production of documents and special interrogatories. He claimed that, at the hearing on August 30, 2011, he believed in good faith he had "complied with the instructions of this Court" and that "the striking of my Answer was the result of mistake, excusable neglect,

14

inadverten[ce] and surprise." Yuh also claimed the Sylvesters' counsel failed to inform the court that he had produced documents in response to the requests for production.

As the trier of fact, the trial court was the ultimate judge of witness credibility, and could disbelieve Yuh's declaration. (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1450.) The trial court would have been justified in disbelieving Yuh because his assertion that the Sylvesters' counsel failed to inform the court he had produced documents in response to the requests for production was false. When the Sylvesters' counsel applied ex parte on September 7, 2011 for an order striking Yuh's answer, counsel submitted a declaration informing the court he had received 44 pages of documents from Yuh in an "unverified mishmash of paper" that did not comply with discovery law. Counsel had not received payment from Yuh of the monetary sanctions.

## III.

### The Evidence at the Default Prove-up Hearing Supported the Compensatory Damages but Not the Amount of Punitive Damages.

Yuh argues the amount of damages awarded against him in the default judgment was, for several reasons, "grossly oppressive" and in violation of Civil Code section 3359.[1] He argues the damages were excessive because (1) Lance Sylvester had no connection with Yuh to support the allegations of the complaint; (2) the evidence submitted by the Sylvesters at the default prove-up hearing was inadmissible and the trial court failed to fulfill its "gatekeeper" function; (3) the evidence did not support the amount of compensatory damages awarded; and (4) the evidence did not support the award of punitive damages.

---

[1] Civil Code section 3359 states: "Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered."

15

The complaint asserted eight causes of action: (1) malicious prosecution, (2) breach of contract, (3) tortious breach of contract, (4) intentional infliction of emotional distress, (5) abuse of process, (6) cancellation of instrument, (7) quiet title, and (8) unfair business practices. The judgment found in favor of the Sylvesters on all but the seventh cause of action, which, apparently, had been dismissed previously. The judgment cancelled the deed of trust recorded on March 5, 2010, in accordance with the prayer under the sixth cause of action. The judgment awarded both Elena Sylvester and Lance Sylvester compensatory damages of $60,000 without allocation among the causes of action, and awarded them punitive damages of $300,000.

A.

*Recovery of Damages by Lance Sylvester*

Yuh argues the judgment awarded damages in favor of Lance Sylvester even though he had no connection with Yuh to support the allegations of the complaint. Of the eight causes of action asserted in the Sylvesters' complaint, all but the first (malicious prosecution) were brought by both Elena Sylvester and Lance Sylvester.

Because the Sylvesters did not seek a definite, fixed amount of damages, they were required to submit evidence at the default prove-up hearing to establish their entitlement to the amount of damages sought. (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 287 (*Kim*).) The Sylvesters submitted evidence at the default prove-up hearing that Lance Sylvester suffered damages caused by Yuh under the cause of action for intentional infliction of emotional distress.[2] Lance Sylvester testified he was

---

[2] The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or

16

afraid of Yuh and believed he would carry out his threats. Lance Sylvester testified he installed security cameras at his home, constantly watched the front of his home, would not answer the front door, and weekly checked the Orange County Recorder's office Web site to see if Yuh had recorded anything else. This evidence supported recovery of compensatory damages by Lance Sylvester.

Because the evidence supported recovery of damages by Lance Sylvester for intentional infliction of emotional distress, we do not discuss recovery under the other causes of action.

B.

*The Evidence Supporting the Compensatory Damages in the Judgment Was Admissible.*

The evidence at the default prove-up hearing consisted of a joint declaration (with attached exhibits) from Elena Sylvester and Lance Sylvester and their live testimony. Yuh argues this evidence was inadmissible because "[m]ost of the statements in their **joint declaration** for judgment are objectionable on the grounds of hearsay and for being conclusory." Yuh does not, however, identify with particularity the parts of the declaration which, he argues, were inadmissible. We therefore decline to address his objections to the joint declaration.

Moreover, the joint declaration and the testimony at the default prove-up hearing constituted admissible evidence supporting the award of compensatory damages. The primary function of a default prove-up hearing is for the plaintiff to establish entitlement to damages when, as here, the complaint does not seek damages in a sum certain. (*Kim*, *supra*, 201 Cal.App.4th at p. 287.) The plaintiff has no responsibility to provide the court with sufficient evidence to prove the properly pleaded facts in the complaint, for they are treated as true for purposes of the default judgment. (*Id.* at

severe emotional distress. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.)

17

p. 281.)  Most of the joint declaration tracks allegations of the complaint, and a few parts pertain to compensatory damages.  Paragraph 11 refers to Yuh's August 2010 letter to the Sylvesters, warning them to "wait for an inauspicious event" and states a copy of the letter is attached.  In paragraph 11, the Sylvesters stated they "were and are in terror" of Yuh, and, in paragraph 13, they stated they had incurred $24,347.20 in attorney fees in prosecuting the lawsuit.  At the default prove-up hearing, both Elena Sylvester and Lance Sylvester testified to the emotional distress that Yuh caused them to suffer.  None of this evidence on damages was objectionable.

With their complaint, the Sylvesters served a statement of damages pursuant to Code of Civil Procedure section 425.11.  The statement of damages claimed $60,000 in general damages, which was the amount of compensatory damages awarded by the trial court.  The amount of damages awarded in the judgment therefore complied with Code of Civil Procedure section 580, subdivision (a) ("[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11").

Yuh argues the trial court made little inquiry into the Sylvesters' claims and "took no more than ten minutes to conclude the proceedings."  From the transcript of the default prove-up hearing, we cannot gauge the amount of time the trial court used to reach its decision, but that is beside the point.  However long the proceedings might have been, the issue is whether the trial court abused its discretion in its award of damages.

Yuh argues the default prove-up hearing did not comply with the requirements for a quiet title action.  As reflected in the default judgment, the trial court did not find in the Sylvesters' favor on the quiet title cause of action.  In his reply brief, Yuh argues the judgment cancelling the forged deed of trust is a judgment for quiet title.  We disagree.  The complaint included a separate cause of action for cancellation of instrument seeking cancellation of the forged deed of trust.  A quiet title action is broader

18

than an action to remove a cloud on title by cancellation of an instrument and is governed by a separate statute. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 655, p. 83.)

C.

*The Evidence Supported the Amount of Compensatory*<br>*Damages Awarded in the Judgment.*

Yuh argues the $60,000 in compensatory damages is "unsupportable" because Lance Sylvester could not bring any causes of action for which he could recover damages. As we have explained, Lance Sylvester presented evidence supporting damages under the cause of action for intentional infliction of emotional distress.

Yuh also argues the default judgment is erroneous because it found in favor of Lance Sylvester on the first cause of action (malicious prosecution), to which he was not a party, and on the fifth cause of action (abuse of process), when he was not the subject of the process abused. This argument has merit. In addition, as we have explained, Lance Sylvester did not submit evidence of damages on any but the cause of action for intentional infliction of emotional distress, and neither Lance Sylvester nor Elena Sylvester can recover damages for unfair business practices.

Those mistakes can be corrected by modifying paragraph 2 of the judgment (page 2, lines 3-8) to read as follows: "The court finds in favor of plaintiff Lance Sylvester and against defendant Lundar Yuh on plaintiffs' Fourth Cause of Action for Intentional Infliction of Emotional Distress only. The court finds in favor of plaintiff Elena Sylvester and against defendant Lundar Yuh on plaintiffs' First Cause of Action for Malicious Prosecution, Second Cause of Action for Breach of Contract, Third Cause of Action for Tortious Breach of Contract, Fourth Cause of Action for Intentional Infliction of Emotional Distress, and Fifth Cause of Action for Abuse of Process." This modification would not affect the award of $60,000 in compensatory damages or the award of punitive damages because Lance Sylvester can share in those damages under the cause of action for intentional infliction of emotional distress.

19

D.

*The Sylvesters Did Not Present Admissible Evidence of Yuh's*
*Financial Condition Sufficient to Make a Well-informed*
*Decision Whether the Punitive Damages Are Excessive.*

The judgment awards the Sylvesters punitive damages of $300,000—precisely the amount claimed in the statement of damages and five times the amount of compensatory damages.[3] Yuh argues the punitive damages were excessive and not supported by the evidence.

It is unclear whether Yuh is arguing the evidence of his conduct did not support imposition of punitive damages. Appellate review of a default judgment is limited to jurisdiction, defects in pleadings, and claims of excessive damages. (See *Uva v. Evans* (1978) 83 Cal.App.3d 356, 362-363.) Thus, we cannot review the trial court's decision to impose punitive damages; we can only review the amount awarded. We note, however, the well-pleaded allegations of the Sylvesters' verified complaint, which are accepted as true, and the joint declaration with exhibits submitted at the default prove-up hearing, establish Yuh engaged in fraud and oppression, and acted maliciously. (See Civ. Code, § 3294, subd. (a).)

The permissible amount of punitive damages is constrained both by federal due process and by California state law. "A court determining whether a punitive damages award is excessive under the due process clause must consider three guideposts: '(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. [Citation.]'" (*Bullock v.*

---

[3] The Sylvesters preserved their right to recover punitive damages on a default judgment by serving a statement of punitive damages on Yuh, pursuant to Code of Civil Procedure section 425.115, subdivisions (b) and (f), before entry of default. (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 60.)

20

*Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 558, quoting *State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, 418.) Under California law, the defendant's financial condition is "an essential factor" in setting the amount of punitive damages. (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1185.)

Yuh challenges the amount of punitive damages as excessive on several grounds, one of which, we conclude, has merit. Yuh asserts the punitive damages award is not supported by substantial evidence of his net worth. "A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110 (*Adams*).) "Absent such evidence, a reviewing court cannot make an informed decision whether the amount of punitive damages is excessive as a matter of law." (*Id.* at p. 118.) The plaintiff has the burden of proof of a defendant's financial condition. (*Id.* at p. 120.)

The *Adams* court did not prescribe a rigid standard for measuring a defendant's ability to pay punitive damages and stated it could not conclude, based on the record before it, "that any particular measure of ability to pay is superior to all others or that a single standard is appropriate in all cases." (*Adams*, *supra*, 54 Cal.3d at p. 116, fn. 7.) Net worth is often described as "the critical determinant of financial condition"; however, "there is no rigid formula and other factors may be dispositive especially when net worth is manipulated and fails to reflect actual wealth." (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 546.)

Appellate courts have interpreted *Adams* to require the plaintiff to provide a balanced overview of the defendant's financial condition; a selective presentation of financial condition evidence will not survive scrutiny. (See *Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 676, 681 [record "silent with respect to . . . liabilities" is insufficient]; *Kelly v. Haag* (2006) 145 Cal.App.4th 910, 916-917; *Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1151-1153; *Lara v. Cadag*

21

(1993) 13 Cal.App.4th 1061, 1063-1064.)  Courts may not infer sufficient wealth to pay a punitive award from a narrow set of data points, such as ownership of valuable assets or a substantial annual income.

In this case, the totality of evidence presented at the default prove-up hearing of Yuh's financial condition is the following passage from the Sylvesters' joint declaration:

"15.  At his deposition LUNDAR YUH testified that he owns the following property:

"1.  850 South Western Avenue, Anaheim, CA 92804

"Value:                          $500,000.00

"1st Mortgage:                   $150,000.00

"2nd Mortgage:                   $300,000.00


"2.  10391 Magnolia Avenue, Anaheim, CA 92804

"Value:                          $400,000.00

"1st Mortgage:                   $200,000.00


"3.  4566 Maplewood Avenue, Los Angeles, CA 90004

"Value:                          $600,000.00

"1st Mortgage:                   $500,000.00

"3 Units:                        Generating $4,000.00/month rent


"4.  1909-1913 4th Street, Long Beach, CA

"Owned free and clear of mortgages

"Restaurant generating $1800.00/month rent


"(See page 22 line 1 through Page 26 line 8)."

This portion of the joint declaration is inadmissible for lack of foundation because the Sylvesters never stated they attended Yuh's deposition or read the deposition transcript (Evid. Code, § 702 [testimony of witness is inadmissible unless witness has personal knowledge of matter]) and because it is inadmissible hearsay (Evid. Code, § 1200). The relevant passages of Yuh's deposition testimony are not attached to the joint declaration, the joint declaration states only that a copy of the deposition transcript "is made available to the court," and the appellate record lacks a notice of lodging or any other evidence the transcript was actually presented to the trial court. The transcript of Yuh's deposition is not part of the appellate record.

Even if this part of the joint declaration were admissible, it would not provide a balanced picture of Yuh's financial condition. Instead, the information in the joint declaration was a select presentation of Yuh's financial condition based on his ownership of several assets. The Sylvesters did not present balance sheets, profit/loss statements, income statements, a complete list of assets, or other documentation presenting a balanced overview of Yuh's financial condition. The joint declaration does not provide a value for property No. 4 and purports to identify only the monthly rental generated by property Nos. 3 and 4, not the monthly net income. We may not infer sufficient wealth to pay a punitive award of $300,000 from the limited and narrow data provided in the joint declaration.

In *Baxter v. Peterson*, *supra*, 150 Cal.App.4th at page 681, the appellate court reversed a punitive damage award of $75,000 because the record demonstrated only current ownership of substantial assets (about 10 residential rental properties, at least two of which were valued at more than $700,000), without any evidence whether there were mortgages on those assets or whether the rental properties were profitable. The plaintiff did not present evidence of the defendant's compensation from employment. (*Ibid.*) "In sum, although the record shows that [the defendant] owns substantial assets, it is silent

23

with respect to her liabilities.  The record is thus insufficient for a reviewing court to evaluate [the defendant]'s ability to pay $75,000 in punitive damages."  (*Ibid.*)

Here, the joint declaration did purport to give the amount of the mortgages against three pieces of Yuh's real property and the amount of monthly income from two of them.  Nonetheless, the joint declaration sought to provide a picture of Yuh's financial condition based only on the purported value of four selected assets.  The information does not provide "meaningful evidence of [Yuh's] financial condition."  (*Adams*, *supra*, 54 Cal.4th at p. 109.)

There are two exceptions to the rule in *Adams*.  One exception is that the plaintiff's burden of producing evidence of the defendant's financial condition may be excused if the defendant violates an order compelling production of financial information at trial.  (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 37-38.)  The other exception is that evidence of a defendant's profit from the wrongdoing at issue in a fraud action may form a basis for punitive damages up to the amount of the wrongful profits, even with evidence of the defendant's financial condition.  (*Cummings Medical Corp. v. Occupational Medical Corp.* (1992) 10 Cal.App.4th 1291, 1298-1301.)  Neither exception applies to this case.

We need not, however, reverse the part of the judgment awarding punitive damages.  The Sylvesters are entitled to recover punitive damages; the only question is the amount.  In such a situation, we may strike the award of punitive damages and remand for a new trial on the amount of punitive damages alone, based on evidence of Yuh's financial condition at the time of retrial.  (See *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1286; *Lara v. Cadag*, *supra*, 13 Cal.App.4th at p. 1065; *Washington v. Farlice* (1991) 1 Cal.App.4th 766, 777.)  The Sylvesters may subpoena documents and witnesses to be available at retrial for the purpose of establishing Yuh's financial condition, and, in addition, we will direct the trial court to enter an order permitting discovery of Yuh's financial condition.  (Civ. Code, § 3295, subd. (c).)

24

Because we conclude the award of punitive damages cannot be sustained on state law grounds, we do not consider whether the punitive damages are excessive under the due process clause.

## IV.

### We Lack Jurisdiction to Consider Yuh's Challenge to the Postjudgment Order Denying the Motion to Vacate the Default Judgment.

Yuh argues the trial court abused its discretion by denying his motion to vacate the default judgment. Yuh filed the motion in April 2012, after he filed the notice of appeal from the default judgment in March. On May 10, 2012, the trial court entered an order denying Yuh's motion to vacate the judgment.

An order denying a postjudgment motion to vacate a judgment is an appealable order. (*Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1137; *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1394.) A notice of appeal from the order denying Yuh's postjudgment motion to vacate the judgment does not appear in the record. Yuh's notice of appeal was filed before Yuh brought the motion to vacate the default judgment and therefore does not mention or include the order denying it. As the order denying the motion to vacate the judgment was separately appealable, and Yuh did not file a notice of appeal from it, we lack jurisdiction to consider his challenge to that order.

### DISPOSITION

The award of punitive damages in the judgment is stricken and the matter is remanded for a new default prove-up hearing only on the issue of the amount of punitive damages. We direct the trial court to issue an order under Code of Civil Procedure section 3295, subdivision (c), permitting the Sylvesters to conduct discovery into Yuh's financial condition. We also direct the trial court to modify paragraph 2 of the judgment

25

(page 2, lines 3-8) to read as follows: "The court finds in favor of plaintiff Lance Sylvester and against defendant Lundar Yuh on plaintiffs' Fourth Cause of Action for Intentional Infliction of Emotional Distress only. The court finds in favor of plaintiff Elena Sylvester and against defendant Lundar Yuh on plaintiffs' First Cause of Action for Malicious Prosecution, Second Cause of Action for Breach of Contract, Third Cause of Action for Tortious Breach of Contract, Fourth Cause of Action for Intentional Infliction of Emotional Distress, and Fifth Cause of Action for Abuse of Process."

In all other respects, and as modified, the judgment is affirmed. The Sylvesters shall recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

26